

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00221-CR

BRIAN EUGENE WOODARD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 29390

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

As Brian Eugene Woodard motored along on Interstate Highway 30 (I-30) through Hunt County, Texas, May 11, 2013, he was stopped by Zane Rhone, a Texas Department of Public Safety Trooper. After the traffic stop, a search of the car divulged the existence of a brick of cocaine in the air intake system weighing almost 1,000 grams. Following a bench trial, Woodard was convicted of possession of 400 grams or more of a controlled substance, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (f) (West 2010), with a deadly-weapon finding and was sentenced to serve forty years' imprisonment, along with being assessed court costs, including attorney fees and a Crime Stopper fee.

Woodard has appealed, claiming that the trial court erred in admitting Rhone's testimony because (1) Rhone failed to have probable cause to have instituted the traffic stop that resulted in the discovery of the illicit drugs which were the basis of the charged offense and (2) the length of the traffic stop exceeded that which was necessary to effect the original purpose of the traffic stop. Woodard maintains that the trial court committed reversible error in not suppressing the fruits of the search conducted by Rhone (i.e., the controlled substances which were the subject of the criminal charge). We find that Woodard has failed to preserve these arguments for our review. We also find that the judgment must be modified to delete the assessment of court-appointed attorney fees. Consequently, we affirm the trial court's judgment, as modified.

I.      **Rhone Failed to Preserve His Points of Error**

At trial, Rhone testified that the circumstance that first drew his attention to the car piloted by Woodard was that it was one of two very clean automobiles with out-of-state license plates that

2

were traveling quite close together.[1]  When Rhone first spotted these vehicles, he pulled into the traffic on I-30 and began to follow them, pulling in the line of traffic behind Woodard's automobile.  Rhone said that he then noticed that the frame around the license plate of Woodard's car obscured more than fifty percent of the name of the state issuing the license plate for the car[2] and that Woodward was following too closely behind the car in front of him to safely avoid a collision.[3]  Observing what he believed to be traffic violations, Rhone instituted a stop of Woodard's car.

Several things raised Rhone's suspicions about Woodard and his passenger, Marlo Donta Persons.  First, upon approaching Woodard's car, he noticed a strong aroma of air fresheners in the car and observed that there was an air freshener package at each of the air conditioner vents in the automobile.  Rhone's experience and training alerted him to the practice by drug transporters or users to liberally use air fresheners in cars in an effort to mask the odor of illicit drugs.  Second, upon questioning Persons and Woodard separately, they gave Rhone conflicting stories about the nature of their trip from Ohio.  Third, after inputting Persons' name into the computer in his patrol car, Rhone was informed that Persons had a reputation of being violent and a history of being "armed and dangerous."

Upon making these observations and receiving this report, Rhone asked for permission to search Woodard's car.  Receiving consent, the search was conducted, which resulted in the

---

[1]Rhone testified that his experience had shown him that this often indicated that the cars were piloted by drug dealers, who apparently believed that the washing of cars would diminish the evidence of illicit drugs in the cars.

[2]*See* TEX. TRANSP. CODE ANN. § 504.945(a)(7)(B) (West Supp. 2014).

[3]*See* TEX. TRANSP. CODE ANN. § 545.062(a) (West 2011).

discovery of the cocaine mentioned above and of a loaded .22 caliber pistol in the glove compartment.

On appeal, Woodard complains that the trial court erred in admitting Rhone's testimony for two reasons. First, he argues that Ohio has no law which corresponds to Section 504.945(a)(7)(B) of the Texas Transportation Code; accordingly, he says that the license plate frame which partially obscured the word "Ohio" on Woodard's license plate was permitted under Ohio law. Woodard claims that because of the "full faith and credit" requirement of the United States Constitution, Texas is required to give full faith and credit to Ohio laws. Going one step further, Woodard claims that Rhone could therefore not use the obscuring nature of the license plate frame as the basis for the traffic stop. Second, Woodard also complains on appeal that the length of the traffic stop exceeded that which was necessary to have effected the original purpose of the traffic stop.

None of these issues has been preserved for our review. Although Woodard complains of the admission of Rhone's testimony at trial, Woodard raised no objection to Rhone's testimony. Further, although Woodard filed a written motion to suppress evidence,[4] there was no request made for a ruling on that motion, and there was no other motion made to suppress the evidence gleaned from the search of Woodard's car. Certainly, the efficacy of the traffic stop would have been

---

[4]There was a very generic and non-specific "Motion to Suppress" filed by Woodard which sought to suppress

all the property and physical evidence, alleged oral and written statements, video tapes and observations to be offered by the State of Texas herein, as well as all physical evidence and testimony that the initial unlawful and unconstitutional initial contact led to be suppressed in that such evidence was obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Section 9, and Article I, Section 10, of the Texas Constitution as well as Articles 1.06 and 38.22, Texas Code of Criminal Procedure.

prime grist for any such request. Although Woodard questioned Rhone at length about the wisdom of his decision to initiate the traffic stop (including questions to Rhone about the potential of conflicting Ohio laws and the driving habits of others on I-30 at the same time and place as Woodard), there was neither a request by Woodard for a ruling that there was no justification for the traffic stop nor a request to suppress evidence of the fruits of the roadside search. Even had he done so, when a proffer was made to introduce the seized cocaine into evidence, Woodard responded that he had no objection.[5]

In order for Woodard to successfully mount a challenge on appeal to the evidence of the roadside search, he would have needed to object in some fashion at the trial level to its introduction. *See* TEX. R. APP. P. 33.1. If Woodard actually possessed any valid objection to the traffic stop that resulted in the discovery of the illicit drugs, he has not preserved that objection for our review. This point of error is overruled.

## II.     Modification of Judgment and Conclusion

The record establishes that Woodard was declared indigent before trial began, and this finding was affirmed after his conviction when appellate counsel was appointed. We find no ruling in the record which countermands either finding of indigency. The trial court's judgment ordered Woodard to pay $940.00 in attorney fees for court-appointed counsel and a $50.00 Crime Stopper fee. Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of court-appointed attorney fees only if "the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal

---

[5]It is worth noting that the ruling in *Thomas v. State*, 408 S.W.3d 877 (Tex. Crim. App. 2013), would have no impact in this matter. This being a bench trial, there was no separate hearing on the motion to suppress.

5

services provided, including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2014). "'[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees'" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). Since there is no finding of the ability of Woodard to pay them, the assessment of the attorney fees was erroneous. *See Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013); *see also Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010); *Martin v. State*, 405 S.W.3d 944, 946–47 (Tex. App.—Texarkana 2013, no pet.).

Notwithstanding the facts that neither of the points on appeal raised by Woodard are being sustained and that we find no reversible error, appellate courts "have the authority to reform judgments and affirm as modified in cases where there is non reversible error." *Ferguson v. State*, 435 S.W.3d 291, 294 (Tex. App.—Waco 2014, pet. struck) (comprehensively discussing appellate cases that have modified judgments).

Accordingly, we modify the trial court's judgment by deleting the assessment of $940.00 for attorney fees from the judgment.

We affirm the trial court's judgment, as modified.

Bailey C. Moseley
Justice

Date Submitted:     August 3, 2015
Date Decided:     August 11, 2015

Do Not Publish